COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-143-CV

DANIELLE WILLIAMS APPELLANT

V.

JERRY W. WILLIAMS, JR. APPELLEE

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is an appeal from the trial court’s property division in a divorce proceeding.  In four issues, appellant Danielle Williams contends that the trial court erred by refusing to recognize her separate property claims and in making its valuation findings.  Because we conclude that the trial court did err in one of its property characterizations, constituting reversible error, we reverse and remand in part and affirm in part.

PROPERTY DIVISION

In her third issue, Appellant complains that the trial court failed to make a just and right division of property, based in part on the errors she asserts in her first and second issues.  In her fourth issue, Appellant argues that the trial court erred in failing to require the return to her of her separate property.

Standard of Review

A trial court has broad discretion in making its “just and right” division of the marital estate.  
Tex. Fam. Code Ann
. § 7.001 (Vernon 2006); 
Murff v. Murff
, 615 S.W.2d 696, 698-99 (Tex. 1981).  
Absent a clear abuse of discretion, we will not disturb that division.  
Bell v. Bell
, 513 S.W.2d 20, 22 (Tex. 1974); 
Boyd v. Boyd
, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.).  An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
In re Barber
, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
See Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).

In this case, the trial court filed its findings of fact and conclusions of law after the judgment.  Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.  
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).

Community Property
 
& Legal Sufficiency

Property possessed by either spouse at the dissolution of the marriage is presumed to be community property, and a party who seeks to assert the separate character of property must prove that character by clear and convincing evidence.  
Tex. Fam. Code Ann
. § 3.003 (Vernon 2006).  Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  
Tex. Civ. Prac. & Rem. Code Ann. 
§ 41.001(2) (Vernon Supp. 2006); 
Tex. Fam. Code Ann
. § 101.007 (Vernon 2002); 
Transp. Ins. Co. v. Moriel
, 879 S.W.2d 10, 31 (Tex. 1994).  This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings.  
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980); 
State v. Addington
, 588 S.W.2d 569, 570 (Tex. 1979).  While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.  
Addington
, 588 S.W.2d at 570.

This higher burden of proof elevates the appellate standard of legal sufficiency review.  
Diamond Shamrock Ref. Co. v. Hall
, 168 S.W.3d 164, 170 (Tex. 2005); 
Sw. Bell Tel. Co. v. Garza
, 164 S.W.3d 607, 622, 625 (Tex. 2004).  In reviewing the evidence for legal sufficiency, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that its finding was true. 
 Hall
, 168 S.W.3d at 170; 
Garza
, 164 S.W.3d at 627.  We must review all the evidence in the light most favorable to the finding.  
Hall
, 168 S.W.3d at 170; 
Garza
, 164 S.W.3d at 627.  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  
Hall
, 168 S.W.3d at 170; 
Garza
, 164 S.W.3d at 627.  We must also disregard all evidence that a reasonable factfinder could have disbelieved.  
Hall
, 168 S.W.3d at 170; 
Garza
, 164 S.W.3d at 627.  We must consider, however, undisputed evidence even if it is contrary to the finding.  
The City of Keller v. Wilson
, 168 S.W.3d 802, 817 (Tex. 2005); 
Hall
, 168 S.W.3d at 170.  That is, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.  
Wilson
, 168 S.W.3d at 827.

Where a sufficiency review overlaps the abuse of discretion standard, we engage in a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion?  
Ho v. Ho
, No. 02-04-00231-CV, 2006 WL 239087, at *2 (Tex. App.—Fort Worth Feb. 2, 2006, no pet.) (mem. op.); 
see Sandone v. Miller-Sandone
, 116 S.W.3d 204, 206 (Tex. App.—El Paso 2003, no pet.).  The traditional legal sufficiency review comes into play with regard to the first question.  
Ho
, 2006 WL 239087, at *2; 
Sandone
, 116 S.W.3d at 206.  We then must proceed to determine whether, based on the elicited evidence, the trial court made a decision that was neither arbitrary nor unreasonable.  
Ho
, 2006 WL 239087, at *2; 
Sandone
, 116 S.W.3d at 206.  We review the trial court’s conclusions of law de novo as legal questions.  
See In re Marriage of Royal
, 107 S.W.3d 846, 850 (Tex. App.—Amarillo 2003, no pet.).  A conclusion of law will not be reversed unless it is erroneous as a matter of law.  
Id
.

The Ranch Property

In her first issue, Appellant complains that the trial court erred by refusing to recognize her separate property claim in and to twelve acres of real property containing a barn, an apartment, and horse stalls (“Ranch Property”).  
The trial court made the following findings of fact with regard to the Ranch Property: 

The Court finds that [Appellant] does not have a separate property claim in the [Ranch Property]. . . . [Appellant] and [Appellee] purchased the [Ranch Property] on August 7, 1997, and had a note with a final maturity payment due on August 1, 2000.  When the final maturity payment became due . . . [they] entered into an agreement with [Appellant’s] mother Rita Soto Lang and her husband Paul Lang.  The agreement was for Mr. and Mrs. Lang to pay the final maturity payment on the [Ranch Property] in August of 2000, and [Appellant] and [Appellee] would then pay Mr. and Mrs. Lang.  The Langs made two payments in August 2000, one for $50,000 on August 8, 2000, and the one for $62,000 on August 25, 2000. [Appellant] and [Appellee] made payments to Mr. and Mrs. Lang.

In 2002, the Langs attempted to have a Promissory Note in the amount of $112,000.00 and secured by the [Ranch Property] executed by [Appellant] and [Appellee].  Appellant did sign the promissory note on May 6, 2002, however, [Appellee] did not sign.
(footnote: 2)

 

Prior to [Appellant] filing for divorce, she took out a loan from her retirement plan on March 26, 2004, to pay for her attorney fees.  On April 19, 2004, the Langs executed a document purporting to convey a gift solely to [Appellant] the balance of the property loan of $51,097.24.  The same document also purports to acknowledge a gift to [Appellant] on August 8, 2000, for the original $50,000 payment made by the Langs.  This same document also recognizes that the original loan for $112,000.00 made by the Langs to [Appellant] and [Appellee] was $112,000.00.
(footnote: 3) 

Because the property was originally purchased as community property and the subsequent loan was a debt of both parties the court finds that any forgiveness of debt benefitted the community estate and [Appellant] has no claim for separate property reimbursement from the community estate.

It filed the following conclusion of law:

Because the [Ranch Property] was originally purchased as community property and the subsequent loan by the Langs was a debt of the community estate, the court concludes as a matter of law that any forgiveness of debt by the Langs benefitted the community estate and [Appellant] has no claim for separate property reimbursement from the community estate in regards to the [Ranch Property].

At trial, Appellant testified that the Ranch Property was community property and that she and Appellee borrowed $150,000 to purchase it. Appellant’s separate property claim is based on the Langs’ payment of $112,000 on the original $150,000 debt, which they made because Appellant could not get another mortgage loan and faced foreclosure.  Appellant  claims a separate property interest of $101,097.24.

Appellant, her mother (“Lang”), and Appellee testified at the bench trial. Appellant and Lang testified that the Lang payments of $50,000 and $62,000 to the Ranch Property’s owner were gifts to Appellant, but that they initially considered the $62,000 payment a loan.  Appellant made approximately the same monthly payments to the Langs that she had made to the Ranch Property’s owner.  Appellant and Lang testified that the Langs later waived the remaining balance, $51,097.24, on the $62,000 loan, as a gift to Appellant. The characterization of property is determined by the inception of title to the property.  
Boyd v. Boyd
, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.).  There was legally sufficient evidence at trial that the Ranch Property was community property, because it was purchased during marriage, and property purchased on community credit does not change its character even if the debt is later paid with separate property funds.  
Broussard v. Tian
, 295 S.W.2d 405, 406 (Tex. 1956) (stating that payment of note installments from separate funds does not affect community ownership, but does give rise to a debt in favor of the separate estate against the community), 
cert
. 
denied, 
 
353 U.S. 941 (1957)
  Appellant’s separate property claim, therefore, is more properly stated as a claim for economic contribution or for reimbursement.  
See
 
Tex. Fam. Code Ann
. §§ 3.402(a)(3), 3.408 (Vernon 2006).  Whether Appellant’s separate estate was entitled to economic contribution or reimbursement from the community estate depends on the proper classification of the $50,000 payment, the Langs’ waiver of the remaining portion of the $62,000 debt, and the status of the promissory note that the trial court found they had attempted to execute.

$50,000 Payment

Property acquired during marriage by gift is separate property.  
See
 
Tex. Fam. Code Ann
. § 3.001 (Vernon 2006).  A trial court has no authority to divest a spouse’s interest in separate property.  
See Cameron v. Cameron
, 641 S.W.2d 210, 213 (Tex. 1982) (stating that a divestiture of separate property is unconstitutional).  A gift is a transfer of property made voluntarily and gratuitously.  
Hilley v. Hilley
, 342 S.W.2d 565, 569 (Tex. 1961).  The burden of proving a gift is on the party claiming it.  
See Powell v. Powell
, 822 S.W.2d 181, 183 (Tex. App.—Houston [1st Dist.] 1991, writ denied).  A valid gift requires:  (1) an intent to make a gift, (2) delivery of the property, and (3) acceptance of the property.  
See id. 
 The donor’s intent is the principal issue in determining whether a gift has been made.  
See Hayes v. Rinehard
, 65 S.W.3d 286, 289 (Tex. App.—Eastland 2001, no pet.).  The person claiming that a gift was made must prove the gift by clear and convincing evidence.  
Id
.

The trial court admitted into evidence a copy of the $50,000 check written to the Ranch Property’s original owner on August 8, 2000.  The property’s name and “gift to [Appellant]” are written in the memo portion of the check.  Appellant’s attorney asked Lang, “At the time that you wrote that check for $50,000 to [owner], what was your intentions with regard to that gift?  Was it that it be to your daughter or that it be to your daughter and her husband?”  Lang replied, “To my daughter.”

Lang also testified that she and her husband gave Appellant a loan because otherwise “they were going to lose the property” and “the intention was that they were going to get a construction loan very soon after that to pay us back.”  It is unclear whether Lang was referencing the first check, second check, or both checks in this statement.  The other check, for $62,000, was written on August 25, 2000, and its only notation in the memo portion is the name of the property.

Two years later, on May 6, 2002, Appellant signed a note to the Langs for $112,000, which included a clause to secure it with a deed of trust on the Ranch Property.  The note was to run from September 20, 2000, to July 15, 2003.  Appellee did not sign the note.  Lang testified that they wanted Appellee to sign the note for the entire $112,000 and that Appellant stopped making payments on the $62,000 note only after the Langs decided to forgive the balance of the loan in Appellant’s favor.

Appellant testified that she signed the note, but claimed that it was for a portion of that amount and that the note was never filed.  The note called for payments of $816.09 per month.  There is no language in the note calling for only a portion of $112,000 to be paid.  Appellant asserted at trial that Appellee knew about the original $50,000 gift.  However, when asked about any changes he would make to Appellant’s inventory and appraisement, Appellee testified that he would add whatever they still owed the Langs, stating:

The only change I would like to make to it is in . . . the monies owed in . . . [the Ranch Property]. . . . I think it’s $101,000.  I don’t know the exact number, but it’s whatever we paid off to [the Langs].  And then, you know, whatever the balance is.  And I believe that it’s 101,000 according to some documents that I have seen here in the court.

We conclude, based on a review of this evidence presented at trial, that the trial court had legally sufficient information upon which to exercise its discretion.  
See Ho
, 2006 WL 239087, at *2.  Reviewing all the evidence in the light most favorable to its finding, the trial court could have reasonably formed a firm belief or conviction that Lang did not have the requisite intent to make a gift of the $50,000 check to Appellant, based on conflicting testimony about repayment and undisputed testimony about Appellant’s monthly payments, which approximated the amount listed in the subsequent note.  
See Hall
, 168 S.W.3d at 170.

The trial court could have reasonably formed a firm belief or conviction, based on this evidence, that the check was not gratuitous.  
See
 
Hilley
,
 
342 S.W.2d at 569. 
 It could also have found Appellee’s testimony about what he believed to be the amount of debt remaining more credible than that of Appellant and Lang.  The note itself indicated that the full amount of the loan was $112,000, not $62,000, and the subsequent document signed by the Langs in 2004 stated, “The total of the original loan to [Appellant] and [Appellee] was $112,000.”  Therefore, the trial court’s decision was not arbitrary or unreasonable and did not result in an abuse of its discretion with regard to its denial of Appellant’s separate property claim based on the $50,000 check.

Cancellation of $51,097.24 Debt

Debts contracted during marriage are presumed to be on the credit of the community and thus are joint community obligations, unless shown otherwise.  
Cockerham v. Cockerham
, 527 S.W.2d 162, 171 (Tex. 1975).  Release of a debt may constitute a valid gift.  
See Crutcher v. Johnson County
, 79 S.W.2d 932, 933 (Tex. Civ. App.—Waco 1935, no writ) (stating that to constitute a valid gift of a debt due to the donor by the donee, there must be an intention that the gift should take effect at once and the intention to forgive the debt must be fully executed).

Lang testified that, with regard to the $62,000 check, it was her intention at the time that it would be repaid.  On April 19, 2004, the Langs signed a document which stated, “We hereby gift the balance of the property loan ($51,097.24) for [the Ranch Property] to [Appellant].”  Lang testified that she prepared this document.  She also testified that her intent was that it be a gift to her daughter and not to Appellee.  When asked the reason for the gift, Lang testified that it was because Appellant was struggling with other bills and “we just wanted to do it for her sake.”

The trial court’s conclusion of law, that the Langs made a loan that constituted community debt, was correct, because it was a loan made to the parties during marriage.  
See Cockerham
, 527 S.W.2d at 171.
  However, because forgiveness of debt can constitute a gift, 
see
 
Crutcher
, 79 S.W.2d at 933, and because the testimony and the 2004 document demonstrated intent, delivery, and acceptance of this gift, there was legally sufficient evidence that the Langs intended to make a gift to Appellant of the forgiveness of the $51,097.24 debt.  Because this evidence is uncontroverted, the trial court’s conclusion that “any forgiveness of debt by the Langs benefitted the community estate,” is incorrect, as a matter of law.  The gift was directed specifically to Appellant, and even if it had not been so directed, gifts to spouses are not community property; rather, each spouse takes half of the gift as his or her separate property.  
See Marriage of Royal
, 107 S.W.3d at 851.

Because the discharge of $51,097.24 was a gift to Appellant, it was her separate property.  
See 
Tex. Fam. Code Ann
. § 3.001.  Therefore, the trial court erred in its conclusion that Appellant had “no claim for separate property reimbursement.”  
If the trial court mischaracterizes separate property as community property, the error requires reversal because the subsequent division of the community estate divests the spouse of his or her separate property.  
Barnard v. Barnard
, 133 S.W.3d 782, 790 (Tex. App.—Fort Worth, 2004, pet. denied) (reversing and remanding for new property division when separate property might have been improperly divested);
 
McLemore v. McLemore
, 641 S.W.2d 395, 398 (Tex. App.—Tyler 1982, no writ) (stating that mischaracterization of separate property as community property is reversible error because such divestiture is prima facie evidence of an abuse of discretion).  Such a divestiture violates the Texas Constitution.  
Cameron v. Cameron
, 641 S.W.2d 210, 219-20 (Tex. 1982) (stating that separate property may not be divested); 
Eggemeyer v. Eggemeyer
, 554 S.W.2d 137, 140, 142 (Tex. 1977) (same); 
see also 
Tex. R. App. 
P. 44.1(a)(1)
. 
 
Once reversible error affecting the “just and right” division of the community estate is found, the court of appeals must remand the entire community estate for a new division.  
Jacobs v. Jacobs
, 687 S.W.2d 731, 733 (Tex. 1985); 
Zeptner v. Zeptner
, 111 S.W.3d 727, 741 (Tex. App.—Fort Worth 2003, no pet.).  Therefore, we sustain Appellant’s first and third issues as they relate to the just and right division of community property and the cancellation of the $51,097.24 debt.
(footnote: 4)
Valuation Findings

In her second issue, Appellant argues that the trial court erred in making valuation findings without any support in the evidence and contrary to the evidence that was admitted.

An appellate brief must contain all issues relied upon, argument and authorities under each issue, and all facts relied upon for the appeal with references to the pages in the record where those facts can be found.  
Weaver v. Sw. Nat’l Bank
, 813 S.W.2d 481, 482 (Tex. 1991); 
see also 
Tex. R. App. P. 
38.1.  An issue is sufficient if it directs the appellate court to the error about which complaint is made.  
Tex. Mexican Ry. Co. v. Bouchet
, 963 S.W.2d 52, 54 (Tex. 1998).  However, the appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party’s argument.  
Hall v. Stephenson
, 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied).  Thus, an inadequately briefed issue may be waived on appeal.  
Id
. at 467; 
see also Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284-85 (Tex. 1994) (discussing “long-standing rule” that point may be waived due to inadequate briefing).

Here, Appellant asserts that the trial court erred in its valuations, without specifying which items of property were improperly valued, but instead asking, “To what guiding principal [sic] can we attribute, by the furthest stretch of the imagination, the finding of these whimsical values without reference to the evidence?”  The trial court attached four pages of valuations to its findings of fact and conclusions of law.  Without additional argument, authorities, and application of law to facts, we cannot evaluate whether the trial court abused its discretion.  
Weaver
, 813 S.W.2d at 482.  Therefore, we overrule Appellant’s second issue based on inadequate briefing.  
See
 
Tex. R. App. P. 
38.1(h).

Separate Personal Property

In her fourth issue, Appellant complains that the trial court erred in failing to require the return to Appellant of her separate personalty; however, she makes no mention of the actual items in this portion of her brief.  Instead, she refers us to her motion for new trial for a description of the contested property.
(footnote: 5)
 A comprehensive search of the record and a review of Appellant’s fact statement reveal that she seeks the return of a professional massager and some veterinarian books.  The motion for new trial indicates that “although the evidence was uncontradicted, the Court failed to confirm the separate property interest of [Appellant] in . . . her massage books [sic], and her veterinarian books.”  The trial court’s final decree and its four itemized pages of the parties’ separate and community property attached to its findings of fact do not mention these items.  In its decree, the trial court specifically awarded all personal property in the possession of or subject to the sole control of each party to that party where not inconsistent with other, more particular, divisions of property.  In the interests of justice, we review whether the trial court abused its discretion with regard to the massager and the veterinarian books. At trial, Appellant testified that Appellee was in possession of her separate property professional massager and veterinarian books and that he should be ordered to return them.  She testified that the veterinarian books were a gift from the Langs, valued at $8,000.  Appellee testified that, as to the massager, it was not in his possession and that he had “no clue” where it was located.  He testified, 

The last time I saw it [the massager] was when I was working.  And it was not in my truck when I picked it up [from Appellant].  It was in the back seat of my truck.  It was not in the back seat of my truck when I picked up my truck from the property one week prior to the divorce, the first divorce court that we went to.

When asked about the condition in which he left the parties’ apartment and what he took with him, Appellee replied that he left it in “pretty much the same condition when I got there,” and that he picked up clothing that was his and did not destroy or throw away any of Appellant’s property when he moved out. Other than Appellant’s testimony, the veterinarian books were not mentioned. 

Given the vagueness and ambiguity regarding the characterization, existence, and location of these items, we cannot say that the trial court abused its discretion in failing to require their return.  We overrule Appellant’s fourth issue.

CONCLUSION

Because the trial court committed reversible error when it concluded that the discharge of the $51,097.24 indebtedness with regard to the Ranch Property was a community benefit for which Appellant was not entitled to economic contribution or reimbursement, we reverse the trial court’s judgment as to the property division and remand the case to the trial court to redivide the parties’ community estate.  We affirm the portion of the judgment granting the divorce. 

PER CURIAM

PANEL F:  HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  January 11, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
A copy of this note was admitted into evidence.

3:
This document was admitted into evidence.

4:
The trial court expressly found that the Langs 
attempted
 to have Appellant and Appellee execute a promissory note secured by the Ranch Property.  Appellant signed it; Appellee did not.  This note’s status, which provides that it “is subordinate to the lien securing another note,” will determine whether Appellant is entitled to economic contribution or to reimbursement.

Economic contribution is one type of statutory reimbursement for contributions by one marital estate to another.  
See Nelson v. Nelson
, 193 S.W.3d 624, 628 (Tex. App.—Eastland 2006, no pet.).  For section 3.402(a)(3) of the family code to apply, there must have been a reduction of the principal amount of a debt incurred during marriage, secured by a lien on property, and incurred for the acquisition of the property.  
Tex. Fam. Code Ann
. § 3.402.  The “lien” requirement has been interpreted to mean “more than an obligation to repay a debt . . . some instrument, agreement, or act giving one creditor superior rights to collateral over all other unsecured creditors or creditors with a subsequently obtained judicial lien.”  
Nelson
, 193 S.W.3d 628-29.

A claim for reimbursement under section 3.408 includes payment by one marital estate of the unsecured liabilities of another marital estate.  
Tex. Fam. Code Ann. 
§ 3.408(b)(1).  The difference between economic contribution and reimbursement is in the result: if the trial court determines that there is a claim for economic contribution, it “shall
 
order
 
that a claim for an economic contribution by one separate marital estate of a spouse to the community marital estate of the spouses be awarded to the owner of the contributing separate marital estate.” 
Tex. Fam. Code Ann
. § 7.007(a)(2) (Vernon 2006).  However, if the trial court determines that there is a claim for reimbursement, it “shall apply equitable principles to determine whether to recognize the claim.”  
Id
. § 7.007(b)(1).

5:
Appellant’s brief states, “The matter of the items of [Appellant]’s separate personalty in the possession of [Appellee] as of the date of the Decree was raised in the Motion for New Trial and no change or additional orders were granted.