NO. 07-02-0251-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 3, 2003

_____

IN THE MATTER OF THE MARRIAGE OF JEREMY ALLEN
ROYAL AND ADRIA RENE ROYAL AND IN THE INTEREST
OF COURTNEY CHEYENNE ROYAL, A MINOR CHILD

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2001-515,444; HONORABLE DRUE FARMER, JUDGE

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

**OPINION**

In three points of error, appellant Jeremy Allen Royal (Jeremy) challenges the

property division made by the trial court in dissolving his marriage to appellee Adria Rene

Royal (Adria). He does not challenge the portion of the trial court's judgment dissolving the

marriage. In each of his points, Jeremy complains of the trial court's division of the

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

couple's home, which comprised the bulk of their community estate. Finding no reversible error in the trial court's property division, we affirm the judgment of the trial court.

The parties were married in August 1994 and had a child in 1995. In 1996, they purchased a house in Lubbock. The details of that purchase will be later discussed in detail below. In October 2001, Jeremy filed suit for divorce, alleging that the marriage had become insupportable because of discord between the parties. Adria answered the suit and included a cross petition seeking divorce. Each of the parties asked to be named managing conservator of their daughter.

After a bench trial, the trial court dissolved the marriage and appointed Jeremy and Adria as joint managing conservators of their daughter. The court found that the house was community property, but Jeremy was entitled to reimbursement for separate property contributions toward the purchase of the house. It ordered the sale of the house and that the proceeds be divided as follows: $20,000 to be used to pay the outstanding mortgage on the house, $12,850 to be paid to Jeremy as reimbursement for his separate property contributions, and the remainder to be divided between the parties. The thrust of Jeremy's appellate challenge is directed at that portion of the property division declaring him to only be entitled to $12,850 reimbursement.

The trial evidence was that in 1996, the parties sought financial assistance from Jeremy's grandparents, Charles and Margaret Kay, to purchase their house. The Kays agreed to help and, on May 11, 1996, provided Jeremy with a $5,000 check which was used as an earnest money deposit. The check was signed by Margaret Kay and Charles

2

Kay testified it was intended as a gift to Jeremy. On May 28, 1996, the day the deal was closed, the parties executed a promissory note in the amount of $60,000 in favor of Charles, which was additionally secured by a deed of trust. The note bore interest at the rate of five percent per annum and provided that only interest would be paid through January 5, 2000, at which time a new note would be executed. Failure to execute a new note at that time would make the entire balance due.

The "settlement statement" made at the closing of the house purchase shows that of the $73,503 required to complete the purchase price, $7,850 was paid in cash, $5,000 came from the earnest money deposit, $60,000 advanced by the Kays, and $653 was credited to cover outstanding taxes on the property. When the deal was closed, $67,850 was paid by Charles by a check made payable to Norwest Bank.[2]

On January 2, 2001, Jeremy and Adria executed a renewal note in the amount of $20,000 to the Kays. The renewal note made reference to the original note in the amount of $60,000 and its original maturity date of January 5, 2000, and referred to an unpaid balance of $20,000 principal and interest on the original note. The same day that the renewal note was executed, the Kays assigned it to Aaron Royal, another of their grandchildren.

At trial, Charles averred that the note and its assignment were part of a plan to reduce his estate for tax purposes through gifts to his grandchildren. He testified that the

---

[2]The Bank's only involvement was as the issuer of a cashier's check in the amount of the Kays' check to it.

$40,000 reduction in the house note was the result of gifts to Jeremy of $10,000 from himself and $10,000 from his wife to Jeremy in 2000 and, in 2001, each of them made another such gift. He said the transfer of the $20,000 note to Aaron was a gift to him to equalize the gifts from the Kays to their grandchildren.[3] Jeremy also introduced a December 29, 2000 letter to Charles from his attorney stating that making the gifts in this way would allow them to be made tax free. Charles averred that was his intent in making the transactions.

The trial court filed findings of fact and conclusions of law. As relevant here, the judge found: (number 11) there was no evidence that on January 2, 2001, Charles had "any intention other than forgiveness of $40,000 [debt] to both [Jeremy and Adria]," and (number 17) there was no evidence that the $40,000 debt forgiveness was "part of what [Jeremy] claims as his 'separate' estate." The court made the following conclusions of law: (number 1) the house was community property, (number 2) the house was acquired by assuming community debt, and (number 3) the $40,000 debt forgiveness by the Kays was a gift to both Jeremy and Adria as community property and never became part of Jeremy's separate estate (citing Section 3.403 of the Texas Family Code (Vernon Supp. 2003)).

Section 7.01 of the Family Code requires a court to order a division of the parties' community estate in a divorce proceeding "in a manner that the court deems just and right." Whether that was accomplished is the controlling question to be decided by us in reviewing a property division in a divorce case. *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.

---

[3]Charles testified that they had previously given another $20,000 to Aaron.

4

App.–Houston [1st Dist.] 1995, writ denied).  In conducting our review, we must remember that the trial court is afforded wide discretion in dividing the marital estate and its decision will not be disturbed unless a clear abuse of that discretion is shown. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

In this appeal, neither party argues the division of other community property affects, or is so intertwined with the division of the house proceeds so as to require consideration of other aspects of the property division.  Our review, then, will be limited to the question actually presented, namely, whether the trial court erred in its division of the house proceeds.

In his first point, Jeremy challenges the sufficiency of the evidence to support the trial court finding that the Kays' debt forgiveness was a gift to the community, or a gift to Jeremy and Adria equally, rather than a gift to him as his separate property.  His second and third points are non-substantive variations on the first point challenging the failure to characterize the gift as his separate property and the failure to grant his claim for economic contribution to the community estate.  Because of their similarity, we will consider all the points together.

A factual sufficiency challenge to the trial court's findings of fact is reviewed under the same legal standards as factual sufficiency challenges to jury verdicts.  *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).  In our review, we weigh all of the evidence and the findings may only be overturned if they are so against the great weight and preponderance

of the evidence as to be clearly wrong and unjust. *Id*. We review the trial court's conclusions of law *de novo* as legal questions. *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex. App.–Austin 1995, no writ). A conclusion of law will not be reversed unless it is erroneous as a matter of law. *Id.*

It is well established that property acquired by gift is the separate property of the donee. Tex. Fam. Code Ann. § 3.001(2) (Vernon 1998). When separate property is used to enhance the value of the community estate, including the reduction of community debt, the spouse whose separate property was used has an equitable right of reimbursement. Tex. Fam. Code Ann. § 3.403 (Vernon Supp. 2003); *Penick v. Penick,* 783 S.W.2d 194, 196 (Tex. 1988). A right of reimbursement is not a property right, but is an equitable claim within the discretion of the trial court in making a just and right division of the community estate. *Beard v. Beard*, 49 S.W.3d 40, 56 (Tex.App.–Waco 2001, pet. denied). The parties agree that the house was purchased with the $12,850 cash payment and the execution of the $60,000 purchase money note. They also agree that the Kays made gifts of $40,000 by crediting the $60,000 note with that much. They disagree as to whom the $40,000 gifts were made.

In support of his position that the entire $40,000 was a series of gifts to him, Jeremy cites the trial evidence that the Kays knew there were problems in the marriage that existed before the gifts were made, as well as Charles's unequivocal testimony that he intended the gifts to be made to Jeremy individually. He also notes the absence of any testimony that Charles had any other intent as well as the inference that the transaction was a gift

6

because Jeremy was the Kay's grandson and what he describes as the "natural bounty of their affection." Jeremy also argues that Adria's testimony that she "assumed" half of the gifts were to her is no actual evidence of the Kays' intent.

Adria argues that Jeremy failed to prove by clear and convincing evidence that the gifts from the Kays were his separate property. She also argues that the evidence on the question was conflicting and the trial court's resolution that the gifts were to both parties equally was within the bounds of its discretion as the trier of fact. She also cites her testimony that Charles never informed them that the $40,000 debt reduction was intended as a gift to Jeremy alone. She additionally notes that there is an absence of any written evidence of Charles's intent or of any gift to Jeremy in 2000.

In our discussion of Jeremy's points, we initially note that we do not agree with Adria that Section 3.03 of the Family Code places the burden on Jeremy to establish by clear and convincing evidence that the gifts from the Kays were his separate property. Section 3.03 establishes that there is a presumption that property possessed by spouses at the time of a dissolution of marriage is community property and, to overcome that presumption, a party must establish its separate property nature by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003 (Vernon 1998). The gifts with which we are concerned do not fall within the classification of "property possessed . . . during or on dissolution of marriage." The property in question is the parties' house, which both agree is community property. To the degree each party claimed an equitable right of reimbursement because of

7

contributions reducing the debt on the house, they bore the burden of establishing their respective claims. Tex. Fam. Code Ann. § 3.403 (Vernon Supp. 2003).

Jeremy specifically challenges the trial court findings of fact numbers 11, 16 and 17. In its finding of fact 11, the trial court found that on January 2, 2001, "there is nothing in the record to indicate [Mr. Kay had] any intention other than the forgiveness of $40,000 to both [Jeremy] and [Adria]." We agree with Jeremy that Charles's testimony is some evidence that he did not intend the debt forgiveness to be a gift to both parties equally. However, that was not the only evidence on the issue and in its capacity as finder of fact, the trial judge was not required to accept Charles's testimony as dispositive of the case. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

Finding 16 was that there was no evidence that Jeremy "contributed anything" or had advance notice of Charles's intent to forgive $40,000 of the couple's debt. We do not perceive how this finding is reversibly material to the trial court's division of the property. Tex. R. App. P. 44.1(a).

In its finding 17, the trial court found that "there is no evidence that any part of the $40,000 forgiven [sic] of the note was ever part of [Jeremy's] 'separate' estate."[4] This finding is in error. First, Charles's testimony that he had given gifts to Jeremy was not so weak as to be a mere surmise or suspicion of a fact; thus, it constituted some evidence of a separate property gift. Second, the finding is contrary to Texas law. As Jeremy points

---

[4]This finding is mirrored in conclusion of law 5.

8

out, Texas courts consistently hold that gifts to spouses jointly are not community property, rather, each spouse takes half of the gift as their separate property. *See, e.g.*, *Dutton v. Dutton*, 18 S.W.3d 849, 852 (Tex. App.–Eastland 2000, pet. denied); *McLemore v. McLemore*, 641 S.W.2d 395, 397 (Tex. App.–Tyler 1982, no writ). *See also* 26 U.S.C. § 2503(b)(1) (excluding from gift taxes the first $10,000 of gifts made to any *person* during a calender year) (emphasis added). That state of the law also requires us to sustain Jeremy's challenge to the trial court's conclusion of law 3, which mirrored finding of fact 17.

We next consider the $12,850 awarded to Jeremy as "reimbursement" for his separate property contribution. It is well established that when separate property is used to acquire property during marriage and title is taken in the names of both spouses, the spouse who contributed the separate property is presumed to have made a gift of half of the separate funds to the other spouse unless rebutted by evidence clearly establishing that there was no intention to make a gift. *Cockerham v. Cockerham*, 537 S.W.2d 162, 168 (Tex. 1975); *In re Marriage of Thurmond*, 888 S.W.2d 269, 273 (Tex.App.–Amarillo 1994, writ denied). The presumption of gift arises because it is not possible for a spouse to make a gift to the community estate. *Id*. at 273, n.1. There is no evidence in this record that Jeremy did not intend to make a gift.

As we noted in *Thurmond*, the use of separate property in the acquisition of community property, as opposed to merely enhancing the value of the community property, gives the contributing spouse equitable title to the extent the contribution was not a gift to the other spouse. *Id*. at 273. Thus, Jeremy's $12,850 was not an economic contribution

9

under Section 3.401 of the Family Code. *Id.* However, Adria did not argue to the trial court nor does she contend here that the trial court erred in its characterization of this amount, neither does she contend that the $12,850 award divested her of separate property. That being true, any error in making this award has been waived. Tex. R. App. P. 33.1.

Our holding that the challenged findings of fact are not supported by the record does not end our task. This is true because if the trial court's holding is correct on any theory applicable to the case, it must be affirmed. *In re Marriage of Braddock*, 64 S.W.3d 581, 585 (Tex. App.–Texarkana 2001, no pet.).

Reiterated, Jeremy argues the evidence establishes the $40,000 debt forgiveness resulted from a series of gifts from the Kays, while Adria contends the evidence shows the gifts were made to her and Jeremy equally, making the trial court's equal division of the proceeds from the sale of the house appropriate.

Adria correctly notes that a party seeking to prove a gift must establish three elements: 1) intent to make a gift; 2) delivery of the property; and 3) acceptance of the property. *In re Estate of Hamill*, 866 S.W.2d 339, 344 (Tex. App.–Amarillo 1983, no writ). *See also Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.–Fort Worth 1983, writ ref'd n.r.e.) (gift must be "fully executed by delivery" to be effective). Charles Kay's testimony of his intent in and of itself is not sufficient to establish the gifts. Here, there is no evidence of the delivery of any gift to Jeremy in 2000. The only evidence of delivery and acceptance is the renewal note executed by the parties in January 2001.

Jeremy has not shown any exception to the delivery requirement that would justify the trial court to give effect to Charles's stated intent by recognizing the January 2001 gifts as having been made in 2000. While federal tax law does not govern the character of these gifts, it is worth noting that 26 U.S.C. § 2503 excludes the first $10,000 of gifts made by a person "during the calender year." It contains no mechanism to deem a gift made in one year as having been made in a prior year. *Compare,* 26 U.S.C. § 219(f)(3) (allowing contributions to individual retirement accounts made before April 15 to be designated as having been made during the prior year). The record before us does not permit any other conclusion than the $40,000 gifts were made in 2001.

The evidence concerning the Kays' intent was conflicting. Adria's testimony controverted that of Charles that he told both parties that he and his wife were making gifts to Jeremy alone. Moreover, in addition to Charles's testimony of his intent to make gifts, the record contains uncontroverted evidence of his intent to avoid gift taxes. Although the record does not expressly show whether the Kays paid gift taxes on their gifts, from Charles's testimony that he treated the gifts as consisting of $20,000 given in 2000 and $20,000 given in 2001, it is a reasonable surmise that he viewed the gifts as falling within the $10,000 per year exemptions.

Given Charles's intent to avoid gift taxes, and the evidence establishing that the whole $40,000 was given in 2001, the trial court could have reasonably concluded that the Kays' gifts were to both Jeremy and Adria. Moreover, equity does not support Jeremy's argument that the trial court was obligated to resolve the conflicting evidence in favor of

11

finding all of the Kays' gifts were to him alone. To do so would be to permit Jeremy and the Kays to utilize Adria's gift tax exemption at the time of the gifts, but to preclude her from benefitting from those gifts upon the dissolution of the marriage.

Our holding that the gifts consisted of $20,000 to each spouse as their separate property does not require a reformation of the court's decree to expressly provide that each of the parties had a $20,000 right of reimbursement in the proceeds from the house. The decretal provision that those proceeds be equally divided sufficiently protects each party's reimbursement claims.

Finally, we address Jeremy's claim that he was divested of his separate property because the trial court required the expenses of the house sale be deducted before the remainder be paid to the parties. That is so, he argues, because the economic contribution, § 3.403 of the Family Code, granted him an "equitable lien" securing his interest in the property. We disagree. Jeremy failed to cite any authority for the proposition that a separate property interest must be recovered before any sale costs. Additionally, an equitable lien authorized by Family Code § 3.403 is just that, a lien. It is not a property interest, separate or otherwise, and the legislature specifically provided no property interest was created by the subchapter authorizing equitable liens for economic contribution. *See* § 3.404(b). Without a separate property interest arising from Jeremy's claim for economic contribution, there can be no prohibited divestiture.

12

In summary, for the foregoing reasons, each of Jeremy's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice