COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-143-CV

 

 

DANIELLE WILLIAMS                                                            APPELLANT

 

                                                   V.

 

JERRY W. WILLIAMS, JR.                                                        APPELLEE

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is an appeal from the
trial court=s property
division in a divorce proceeding.  In
four issues, appellant Danielle Williams contends that the trial court erred by
refusing to recognize her separate property claims and in making its valuation
findings.  Because we conclude that the
trial court did err in one of its property characterizations, constituting
reversible error, we reverse and remand in part and affirm in part.

PROPERTY DIVISION

In her third issue, Appellant
complains that the trial court failed to make a just and right division of
property, based in part on the errors she asserts in her first and second
issues.  In her fourth issue, Appellant
argues that the trial court erred in failing to require the return to her of
her separate property.

Standard of Review

A trial court has broad
discretion in making its Ajust and
right@ division of the marital estate.  Tex.
Fam. Code Ann. ' 7.001
(Vernon 2006); Murff v. Murff, 615 S.W.2d 696, 698‑99 (Tex.
1981).  Absent a clear abuse of
discretion, we will not disturb that division. 
Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974); Boyd v. Boyd,
67 S.W.3d 398, 406 (Tex. App.CFort Worth 2002, no pet.).  An
abuse of discretion does not occur where the trial court bases its decisions on
conflicting evidence.  In re Barber,
982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court=s
decision.  See Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 211 (Tex. 2002).








In this case, the trial court
filed its findings of fact and conclusions of law after the judgment.  Findings of fact entered in a case tried to
the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s findings of fact are reviewable for legal sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s answer.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).

Community Property & Legal Sufficiency








Property possessed by either
spouse at the dissolution of the marriage is presumed to be community property,
and a party who seeks to assert the separate character of property must prove that
character by clear and convincing evidence. 
Tex. Fam. Code Ann. ' 3.003 (Vernon 2006).  Clear and
convincing evidence is that measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.  Tex. Civ. Prac. & Rem. Code Ann. ' 41.001(2) (Vernon Supp. 2006); Tex.
Fam. Code Ann. ' 101.007 (Vernon
2002); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994).  This intermediate standard falls between the
preponderance standard of civil proceedings and the reasonable doubt standard
of criminal proceedings.  In re G.M.,
596 S.W.2d 846, 847 (Tex. 1980); State v. Addington, 588 S.W.2d 569, 570
(Tex. 1979).  While the proof must weigh
heavier than merely the greater weight of the credible evidence, there is no
requirement that the evidence be unequivocal or undisputed.  Addington, 588 S.W.2d at 570.








This higher burden of proof
elevates the appellate standard of legal sufficiency review.  Diamond Shamrock Ref. Co. v. Hall, 168
S.W.3d 164, 170 (Tex. 2005); Sw. Bell Tel. Co. v. Garza, 164 S.W.3d 607,
622, 625 (Tex. 2004).  In reviewing the
evidence for legal sufficiency, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that its
finding was true.  Hall, 168
S.W.3d at 170; Garza, 164 S.W.3d at 627. 
We must review all the evidence in the light most favorable to the
finding.  Hall, 168 S.W.3d at 170;
Garza, 164 S.W.3d at 627.  This
means that we must assume that the factfinder resolved any disputed facts in
favor of its finding if a reasonable factfinder could have done so.  Hall, 168 S.W.3d at 170; Garza,
164 S.W.3d at 627.  We must also
disregard all evidence that a reasonable factfinder could have
disbelieved.  Hall, 168 S.W.3d at
170; Garza, 164 S.W.3d at 627.  We
must consider, however, undisputed evidence even if it is contrary to the
finding.  The City of Keller v. Wilson,
168 S.W.3d 802, 817 (Tex. 2005); Hall, 168 S.W.3d at 170.  That is, we must consider evidence favorable
to the finding if a reasonable factfinder could, and disregard evidence contrary
to the finding unless a reasonable factfinder could not.  Wilson, 168 S.W.3d at 827.

Where a sufficiency review
overlaps the abuse of discretion standard, we engage in a two‑pronged
inquiry: (1) did the trial court have sufficient information upon which to
exercise its discretion; and (2) did the trial court err in its application of
discretion?  Ho v. Ho, No. 02‑04‑00231‑CV,
2006 WL 239087, at *2 (Tex. App.CFort Worth Feb. 2, 2006, no pet.) (mem. op.); see Sandone v. Miller‑Sandone,
116 S.W.3d 204, 206 (Tex. App.CEl Paso 2003, no pet.).  The
traditional legal sufficiency review comes into play with regard to the first
question.  Ho, 2006 WL 239087, at
*2; Sandone, 116 S.W.3d at 206. 
We then must proceed to determine whether, based on the elicited
evidence, the trial court made a decision that was neither arbitrary nor
unreasonable.  Ho, 2006 WL 239087,
at *2; Sandone, 116 S.W.3d at 206. 
We review the trial court=s conclusions of law de novo as legal questions.  See In re Marriage of Royal, 107
S.W.3d 846, 850 (Tex. App.CAmarillo 2003, no pet.).  A
conclusion of law will not be reversed unless it is erroneous as a matter of
law.  Id.

The Ranch Property








In her first issue, Appellant
complains that the trial court erred by refusing to recognize her separate
property claim in and to twelve acres of real property containing a barn, an
apartment, and horse stalls (ARanch Property@).  The trial court made the following findings
of fact with regard to the Ranch Property: 

$                  
The Court finds that [Appellant] does not have a
separate property claim in the [Ranch Property]. . . . [Appellant] and
[Appellee] purchased the [Ranch Property] on August 7, 1997, and had a note
with a final maturity payment due on August 1, 2000.  When the final maturity payment became due .
. . [they] entered into an agreement with [Appellant=s]
mother Rita Soto Lang and her husband Paul Lang.  The agreement was for Mr. and Mrs. Lang to
pay the final maturity payment on the [Ranch Property] in August of 2000, and
[Appellant] and [Appellee] would then pay Mr. and Mrs. Lang.  The Langs made two payments in August 2000,
one for $50,000 on August 8, 2000, and the one for $62,000 on August 25, 2000.
[Appellant] and [Appellee] made payments to Mr. and Mrs. Lang.

 

$                  
In 2002, the Langs attempted to have a Promissory
Note in the amount of $112,000.00 and secured by the [Ranch Property] executed
by [Appellant] and [Appellee].  Appellant
did sign the promissory note on May 6, 2002, however, [Appellee] did not sign.[2]

 

$                  
Prior to [Appellant] filing for divorce, she took
out a loan from her retirement plan on March 26, 2004, to pay for her attorney
fees.  On April 19, 2004, the Langs
executed a document purporting to convey a gift solely to [Appellant] the
balance of the property loan of $51,097.24. 
The same document also purports to acknowledge a gift to [Appellant] on
August 8, 2000, for the original $50,000 payment made by the Langs.  This same document also recognizes that the
original loan for $112,000.00 made by the Langs to [Appellant] and [Appellee]
was $112,000.00.[3]









$                  
Because the property was originally purchased as
community property and the subsequent loan was a debt of both parties the court
finds that any forgiveness of debt benefitted the community estate and
[Appellant] has no claim for separate property reimbursement from the community
estate.

 

It filed the following conclusion of law:

$                  
Because the [Ranch Property] was originally
purchased as community property and the subsequent loan by the Langs was a debt
of the community estate, the court concludes as a matter of law that any
forgiveness of debt by the Langs benefitted the community estate and
[Appellant] has no claim for separate property reimbursement from the community
estate in regards to the [Ranch Property].

 

At trial, Appellant testified
that the Ranch Property was community property and that she and Appellee
borrowed $150,000 to purchase it. Appellant=s separate property claim is based on the Langs= payment of $112,000 on the original $150,000 debt, which they made
because Appellant could not get another mortgage loan and faced
foreclosure.  Appellant  claims a separate property interest of
$101,097.24.








Appellant, her mother (ALang@), and
Appellee testified at the bench trial. Appellant and Lang testified that the
Lang payments of $50,000 and $62,000 to the Ranch Property=s owner were gifts to Appellant, but that they initially considered
the $62,000 payment a loan.  Appellant
made approximately the same monthly payments to the Langs that she had made to
the Ranch Property=s
owner.  Appellant and Lang testified that
the Langs later waived the remaining balance, $51,097.24, on the $62,000 loan,
as a gift to Appellant.         The
characterization of property is determined by the inception of title to the
property.  Boyd v. Boyd, 131
S.W.3d 605, 612 (Tex. App.CFort Worth 2004, no pet.). 
There was legally sufficient evidence at trial that the Ranch Property
was community property, because it was purchased during marriage, and property
purchased on community credit does not change its character even if the debt is
later paid with separate property funds. 
Broussard v. Tian, 295 S.W.2d 405, 406 (Tex. 1956) (stating that
payment of note installments from separate funds does not affect community
ownership, but does give rise to a debt in favor of the separate estate against
the community), cert. denied,  353
U.S. 941 (1957)  Appellant=s separate property claim, therefore, is more properly stated as a
claim for economic contribution or for reimbursement.  See Tex.
Fam. Code Ann. ''
3.402(a)(3), 3.408 (Vernon 2006). 
Whether Appellant=s separate
estate was entitled to economic contribution or reimbursement from the
community estate depends on the proper classification of the $50,000 payment,
the Langs= waiver of
the remaining portion of the $62,000 debt, and the status of the promissory
note that the trial court found they had attempted to execute.

 

 








$50,000 Payment

Property acquired during
marriage by gift is separate property.  See
Tex. Fam. Code Ann. ' 3.001 (Vernon 2006).  A trial
court has no authority to divest a spouse=s interest in separate property. 
See Cameron v. Cameron, 641 S.W.2d 210, 213 (Tex. 1982) (stating
that a divestiture of separate property is unconstitutional).  A gift is a transfer of property made
voluntarily and gratuitously.  Hilley
v. Hilley, 342 S.W.2d 565, 569 (Tex. 1961). 
The burden of proving a gift is on the party claiming it.  See Powell v. Powell, 822 S.W.2d 181,
183 (Tex. App.CHouston [1st
Dist.] 1991, writ denied).  A valid gift
requires:  (1) an intent to make a gift,
(2) delivery of the property, and (3) acceptance of the property.  See id.  The donor=s intent is the principal issue in determining whether a gift has been
made.  See Hayes v. Rinehard, 65
S.W.3d 286, 289 (Tex. App.CEastland 2001, no pet.).  The
person claiming that a gift was made must prove the gift by clear and
convincing evidence.  Id.








The trial court admitted into
evidence a copy of the $50,000 check written to the Ranch Property=s original owner on August 8, 2000. 
The property=s name and Agift to [Appellant]@ are written in the memo portion of the check.  Appellant=s attorney asked Lang, AAt the time that you wrote that check for $50,000 to [owner], what was
your intentions with regard to that gift? 
Was it that it be to your daughter or that it be to your daughter and
her husband?@  Lang replied, ATo my daughter.@

Lang also testified that she
and her husband gave Appellant a loan because otherwise Athey were going to lose the property@ and Athe
intention was that they were going to get a construction loan very soon after
that to pay us back.@  It is unclear whether Lang was referencing
the first check, second check, or both checks in this statement.  The other check, for $62,000, was written on
August 25, 2000, and its only notation in the memo portion is the name of the
property.

Two years later, on May 6,
2002, Appellant signed a note to the Langs for $112,000, which included a
clause to secure it with a deed of trust on the Ranch Property.  The note was to run from September 20, 2000,
to July 15, 2003.  Appellee did not sign
the note.  Lang testified that they
wanted Appellee to sign the note for the entire $112,000 and that Appellant
stopped making payments on the $62,000 note only after the Langs decided to
forgive the balance of the loan in Appellant=s favor.








Appellant testified that she
signed the note, but claimed that it was for a portion of that amount and that
the note was never filed.  The note
called for payments of $816.09 per month. 
There is no language in the note calling for only a portion of $112,000
to be paid.  Appellant asserted at trial
that Appellee knew about the original $50,000 gift.  However, when asked about any changes he
would make to Appellant=s inventory
and appraisement, Appellee testified that he would add whatever they still owed
the Langs, stating:

The
only change I would like to make to it is in . . . the monies owed in . . .
[the Ranch Property]. . . . I think it=s $101,000.  I don=t know the exact number, but
it=s
whatever we paid off to [the Langs].  And
then, you know, whatever the balance is. 
And I believe that it=s 101,000 according to some
documents that I have seen here in the court.

 

We conclude, based on a
review of this evidence presented at trial, that the trial court had legally
sufficient information upon which to exercise its discretion.  See Ho, 2006 WL 239087, at *2.  Reviewing all the evidence in the light most
favorable to its finding, the trial court could have reasonably formed a firm
belief or conviction that Lang did not have the requisite intent to make a gift
of the $50,000 check to Appellant, based on conflicting testimony about
repayment and undisputed testimony about Appellant=s monthly payments, which approximated the amount listed in the
subsequent note.  See Hall, 168
S.W.3d at 170.








The trial court could have
reasonably formed a firm belief or conviction, based on this evidence, that the
check was not gratuitous.  See Hilley,
342 S.W.2d at 569.  It could also
have found Appellee=s testimony
about what he believed to be the amount of debt remaining more credible than
that of Appellant and Lang.  The note
itself indicated that the full amount of the loan was $112,000, not $62,000,
and the subsequent document signed by the Langs in 2004 stated, AThe total of the original loan to [Appellant] and [Appellee] was
$112,000.@  Therefore, the trial court=s decision was not arbitrary or unreasonable and did not result in an
abuse of its discretion with regard to its denial of Appellant=s separate property claim based on the $50,000 check.

Cancellation of $51,097.24 Debt

Debts contracted during marriage
are presumed to be on the credit of the community and thus are joint community
obligations, unless shown otherwise.  Cockerham
v. Cockerham, 527 S.W.2d 162, 171 (Tex. 1975).  Release of a debt may constitute a valid
gift.  See Crutcher v. Johnson County,
79 S.W.2d 932, 933 (Tex. Civ. App.CWaco 1935, no writ) (stating that to constitute a valid gift of a debt
due to the donor by the donee, there must be an intention that the gift should
take effect at once and the intention to forgive the debt must be fully
executed).








Lang testified that, with
regard to the $62,000 check, it was her intention at the time that it would be
repaid.  On April 19, 2004, the Langs
signed a document which stated, AWe hereby gift the balance of the property loan ($51,097.24) for [the
Ranch Property] to [Appellant].@  Lang testified that she
prepared this document.  She also
testified that her intent was that it be a gift to her daughter and not to
Appellee.  When asked the reason for the
gift, Lang testified that it was because Appellant was struggling with other
bills and Awe just
wanted to do it for her sake.@

The trial court=s conclusion of law, that the Langs made a loan that constituted
community debt, was correct, because it was a loan made to the parties during
marriage.  See Cockerham, 527
S.W.2d at 171.  However, because
forgiveness of debt can constitute a gift, see Crutcher, 79
S.W.2d at 933, and because the testimony and the 2004 document demonstrated
intent, delivery, and acceptance of this gift, there was legally sufficient
evidence that the Langs intended to make a gift to Appellant of the forgiveness
of the $51,097.24 debt.  Because this
evidence is uncontroverted, the trial court=s conclusion that Aany forgiveness of debt by the Langs benefitted the community estate,@ is incorrect, as a matter of law. 
The gift was directed specifically to Appellant, and even if it had not
been so directed, gifts to spouses are not community property; rather, each
spouse takes half of the gift as his or her separate property.  See Marriage of Royal, 107 S.W.3d at
851.













Because the discharge of
$51,097.24 was a gift to Appellant, it was her separate property.  See Tex.
Fam. Code Ann. ' 3.001.  Therefore, the trial court erred in its
conclusion that Appellant had Ano claim for separate property reimbursement.@  If the trial court
mischaracterizes separate property as community property, the error requires
reversal because the subsequent division of the community estate divests the
spouse of his or her separate property.  Barnard
v. Barnard, 133 S.W.3d 782, 790 (Tex. App.CFort Worth, 2004, pet. denied) (reversing and remanding for new
property division when separate property might have been improperly divested); McLemore
v. McLemore, 641 S.W.2d 395, 398 (Tex. App.CTyler 1982, no writ) (stating that mischaracterization of separate
property as community property is reversible error because such divestiture is
prima facie evidence of an abuse of discretion).  Such a divestiture violates the Texas
Constitution.  Cameron v. Cameron,
641 S.W.2d 210, 219‑20 (Tex. 1982) (stating that separate property may
not be divested); Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140, 142 (Tex.
1977) (same); see also Tex. R.
App. P. 44.1(a)(1).  Once
reversible error affecting the Ajust and right@ division of
the community estate is found, the court of appeals must remand the entire
community estate for a new division.  Jacobs
v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Zeptner v. Zeptner, 111
S.W.3d 727, 741 (Tex. App.CFort Worth 2003, no pet.). 
Therefore, we sustain Appellant=s first and third issues as they relate to the just and right division
of community property and the cancellation of the $51,097.24 debt.[4]

Valuation Findings

In her second issue,
Appellant argues that the trial court erred in making valuation findings
without any support in the evidence and contrary to the evidence that was
admitted.








An appellate brief must
contain all issues relied upon, argument and authorities under each issue, and
all facts relied upon for the appeal with references to the pages in the record
where those facts can be found.  Weaver
v. Sw. Nat=l Bank, 813 S.W.2d 481, 482 (Tex. 1991); see also Tex. R. App. P. 38.1.  An issue is sufficient if it directs the
appellate court to the error about which complaint is made.  Tex. Mexican Ry. Co. v. Bouchet, 963
S.W.2d 52, 54 (Tex. 1998).  However, the
appellate court is not required to search the appellate record, with no
guidance from the briefing party, to determine if the record supports the party=s argument.  Hall v.
Stephenson, 919 S.W.2d 454, 466‑67 (Tex. App.CFort Worth 1996, writ denied). 
Thus, an inadequately briefed issue may be waived on appeal.  Id. at 467; see also Fredonia State
Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284‑85 (Tex. 1994)
(discussing Along‑standing
rule@ that point may be waived due to inadequate briefing).








Here, Appellant asserts that
the trial court erred in its valuations, without specifying which items of
property were improperly valued, but instead asking, ATo what guiding principal [sic] can we attribute, by the furthest
stretch of the imagination, the finding of these whimsical values without
reference to the evidence?@  The trial court attached four
pages of valuations to its findings of fact and conclusions of law.  Without additional argument, authorities, and
application of law to facts, we cannot evaluate whether the trial court abused
its discretion.  Weaver, 813
S.W.2d at 482.  Therefore, we overrule
Appellant=s second
issue based on inadequate briefing.  See
Tex. R. App. P. 38.1(h).

Separate Personal Property

In her fourth issue,
Appellant complains that the trial court erred in failing to require the return
to Appellant of her separate personalty; however, she makes no mention of the
actual items in this portion of her brief. 
Instead, she refers us to her motion for new trial for a description of
the contested property.[5]








A comprehensive search of the
record and a review of Appellant=s fact statement reveal that she seeks the return of a professional
massager and some veterinarian books. 
The motion for new trial indicates that Aalthough the evidence was uncontradicted, the Court failed to confirm
the separate property interest of [Appellant] in . . . her massage books [sic],
and her veterinarian books.@  The trial court=s final decree and its four itemized pages of the parties= separate and community property attached to its findings of fact do
not mention these items.  In its decree,
the trial court specifically awarded all personal property in the possession of
or subject to the sole control of each party to that party where not
inconsistent with other, more particular, divisions of property.  In the interests of justice, we review
whether the trial court abused its discretion with regard to the massager and
the veterinarian books. At trial,
Appellant testified that Appellee was in possession of her separate property
professional massager and veterinarian books and that he should be ordered to
return them.  She testified that the
veterinarian books were a gift from the Langs, valued at $8,000.  Appellee testified that, as to the massager,
it was not in his possession and that he had Ano clue@ where it
was located.  He testified, 

The
last time I saw it [the massager] was when I was working.  And it was not in my truck when I picked it
up [from Appellant].  It was in the back
seat of my truck.  It was not in the back
seat of my truck when I picked up my truck from the property one week prior to
the divorce, the first divorce court that we went to.

 

When asked about the condition in which he left
the parties= apartment
and what he took with him, Appellee replied that he left it in Apretty much the same condition when I got there,@ and that he picked up clothing that was his and did not destroy or
throw away any of Appellant=s property when he moved out. Other than Appellant=s testimony, the veterinarian books were not mentioned. 








Given the vagueness and
ambiguity regarding the characterization, existence, and location of these
items, we cannot say that the trial court abused its discretion in failing to
require their return.  We overrule
Appellant=s fourth
issue.

CONCLUSION

Because the trial court
committed reversible error when it concluded that the discharge of the
$51,097.24 indebtedness with regard to the Ranch Property was a community
benefit for which Appellant was not entitled to economic contribution or
reimbursement, we reverse the trial court=s judgment as to the property division and remand the case to the
trial court to redivide the parties= community estate.  We affirm
the portion of the judgment granting the divorce. 

PER CURIAM

PANEL F: 
HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED: 
January 11, 2007











[1]See Tex.
R. App. P. 47.4.





[2]A copy of this note was admitted
into evidence.





[3]This document was admitted into
evidence.





[4]The trial court expressly found
that the Langs attempted to have Appellant and Appellee execute a
promissory note secured by the Ranch Property. 
Appellant signed it; Appellee did not. 
This note=s status, which provides that it Ais subordinate to the lien securing
another note,@ will determine whether Appellant
is entitled to economic contribution or to reimbursement.

Economic contribution is one type
of statutory reimbursement for contributions by one marital estate to
another.  See Nelson v. Nelson,
193 S.W.3d 624, 628 (Tex. App.CEastland 2006, no pet.). 
For section 3.402(a)(3) of the family code to apply, there must have
been a reduction of the principal amount of a debt incurred during marriage,
secured by a lien on property, and incurred for the acquisition of the
property.  Tex. Fam. Code Ann. ' 3.402.  The Alien@ requirement has been interpreted
to mean Amore than an obligation to repay a
debt . . . some instrument, agreement, or act giving one creditor superior
rights to collateral over all other unsecured creditors or creditors with a
subsequently obtained judicial lien.@  Nelson, 193
S.W.3d 628‑29.

A claim for
reimbursement under section 3.408 includes payment by one marital estate of the
unsecured liabilities of another marital estate.  Tex.
Fam. Code Ann. ' 3.408(b)(1).  The difference between economic contribution
and reimbursement is in the result: if the trial court determines that there is
a claim for economic contribution, it Ashall order that a claim for an economic
contribution by one separate marital estate of a spouse to the community
marital estate of the spouses be awarded to the owner of the contributing
separate marital estate.@ Tex.
Fam. Code Ann. ' 7.007(a)(2) (Vernon 2006).  However, if the trial court determines that
there is a claim for reimbursement, it Ashall apply equitable principles to determine whether to
recognize the claim.@ 
Id. ' 7.007(b)(1).





[5]Appellant=s brief states, AThe matter of the items of
[Appellant]=s separate personalty in the
possession of [Appellee] as of the date of the Decree was raised in the Motion
for New Trial and no change or additional orders were granted.