

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00172-CV
_____

**IN THE MATTER OF THE MARRIAGE OF SUSAN ELIZABETH MCMAHEN AND JOE DYKE MCMAHEN AND IN THE INTEREST OF Z.L.M., A CHILD**

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 26475, Honorable Dan Mike Bird, Presiding

June 6, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This case is about a division of property as a consequence of divorce and whether a gift to three people to avoid gift tax consequences was actually a gift to only one person. The total amount of the gift was $50,000, and it was made to Joe Dyke McMahen, his then-wife Susan, and one of their children, Jake McMahen. Susan's parents, Carl and Nancy Samuelson, made the gift via three checks in 2003 containing the words "a gift" written in the memo section of each instrument. Two checks were in

the amount of $20,000 while the third was for $10,000. Joe Dyke and Susan used all of the monies to buy a house shortly thereafter. Furthermore, both Nancy and Carl indicated that the gifts were made in the manner they were due to the federal gift tax laws and to avoid excessive gift tax liability. Yet, they also informed the trial court that they intended to make a gift only to their daughter Susan. Neither party cited us to anything of record suggesting that the Samuelsons amended their 2003 tax return to reflect the supposedly true nature of the $50,000 disposition. Nonetheless, the trial court found that they intended to gift the entire sum to Susan alone and that there was clear and convincing evidence that the three checks were "written in consideration of gift tax consequences and do not evidence the intent to make a gift to Joe Dyke McMahen or Jake McMahen." The substance of this appeal attacks that finding; that is, each issue is directly or indirectly dependent upon it. And, among other things, Joe Dyke contends that the finding lacks legally and factually sufficient evidentiary support. We agree, reverse in part and remand in part.

*Standard of Review and Applicable Law*

A finding withstands a legal sufficiency challenge if the record contains more than a scintilla of evidence to support it. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002). A finding is factually sufficient if it is not so against the weight and preponderance of the evidence as to be clearly wrong and unjust. *In re Marriage of Royal,* 107 S.W.3d 846, 850 (Tex. App.—Amarillo 2003, no pet.). Yet, a somewhat different standard may apply when the burden of proof at trial is one other than a "preponderance of the evidence." For instance, where a party is obligated to

2

prove a claim by clear and convincing evidence, we utilize a higher standard of review when assessing a finding's legal and factual sufficiency. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). There, we assess whether the evidence was enough to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be determined. TEX. FAM. CODE. ANN. § 101.007 (West 2014).

Next, property acquired by either spouse during marriage is presumed to be community property. *Id.* § 3.003(a) (West 2006); *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011). That presumption is subject to rebuttal, though. The spouse attempting to rebut it must do so via clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). So, the evidence of record here must be of such quantum so as to enable the fact finder to form a firm conviction or belief that the entire $50,000 in question was the separate property of Susan.

Next, statute tells us that property acquired by a spouse during marriage by gift is the recipient's separate property. TEX. FAM. CODE ANN. § 3.001 (West 2006).[1] But to constitute a gift, the disposition must satisfy various criteria. It requires donative intent on the part of the donor, delivery of the property, and acceptance of that property. *In re Lang*, No. 07-06-00106-CV, 2008 Tex. App. LEXIS 2067, at *5 (Tex. App.—Amarillo March 19, 2008 no pet.); *In re Royal,* 107 S.W.3d at 852. Moreover, the window through which we look when considering the issue is that existent at the time of the conveyance. *In re Lang*, 2008 Tex. App. LEXIS 2067, at *5; *accord Bush v. Bush,* 336 S.W.3d 722, 744 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating the same).

---

[1] Gifts to spouses jointly are not community property; rather, each spouse takes half of the gift as their separate property. *In re Royal*, 107 S.W.3d 846, 851 (Tex. App.—Amarillo, no pet.).

Finally, we consider a passage from our prior opinion in *In re Royal* worthy of comment here. In that case, the husband (Jeremy) and wife (Adria) bought a home. Part of the purchase price was paid through a loan from the Kays, who were Jeremy's grandparents. The latter eventually forgave $40,000 of the loan via their intention to make a gift to both their grandson and his spouse. Furthermore, the grandfather structured the gift as he did to minimize his estate and gift tax liabilities. Upon the divorce of the two gift recipients, the grandson contended that the entire gift was his alone. The trial court disagreed and awarded both Jeremy and Adria an equal percentage of it. Jeremy attacked that determination. In deciding whether the evidence was sufficient to support it, we not only noted the existence of evidence indicating that the gift was to both Jeremy and Adria but made the following observation:

> . . . equity does not support Jeremy's argument that the trial court was obligated to resolve the conflicting evidence in favor of finding all of the Kays' gifts were to him alone. *To do so would be to permit Jeremy and the Kays to utilize Adria's gift tax exemption at the time of the gifts, but to preclude her from benefitting from those gifts upon the dissolution of the marriage.*

*In re Royal*, 107 S.W.3d at 852 (Emphasis added).

We now turn to the record before us. That it contains some evidence supporting the trial court's finding is clear. As previously mentioned, the Samuelsons themselves disclosed to the trial court, some nine years after the fact, that they intended the entire $50,000 to be their daughter's as an advancement of her inheritance. Yet, in 2003, they did not write her a $50,000 check or hand her that sum in cash. Rather, they wrote three different checks payable to three different people. At the bottom of each instrument appeared the words "a gift." Absent was any other writing suggesting that

4

the sums represented by each instrument were intended for a particular purpose or were intended to go to Susan or that the expenditure of the proceeds was conditioned in any respect. Nor did either donor tell Joe Dyke, at the time his check was delivered to him, that the sum actually belonged to Susan. Rather, Carl acknowledged that the check to Joe Dyke came without limitations. That Joe Dyke negotiated the $20,000 check made payable to him is undisputed, as well.[2] Also undisputed is the evidence that each check was deposited into a joint account and that the proceeds were used as partial payment for the family abode.

More importantly, both Carl and Nancy had a particular reason for distributing the checks in the way they did. It is undisputed that they intended to avoid gift tax consequences, and missing from this record is evidence that either filed amended or corrected tax returns reflecting their purported intent to gift the entire $50,000 to their daughter. Also missing is evidence that the purported advancement to Susan of her inheritance was memorialized in a will or other legal document before the donors testified at trial.

So, what we have here is a situation quite akin to that in *Royal*. The donors made unconditional gifts, took advantage of the gift tax laws in structuring those gifts, and allowed the recipients to reap benefit from them. Yet, it was not until their descendant became embroiled in a divorce that the donors opted to reveal their supposedly true intent. "To . . . permit . . . [Susan] and the . . . [Samuelsons] to utilize . . . [Joe Dyke's] gift tax exemption at the time of the gifts, but to preclude . . .

_____

[2] Of course, Susan testified that her parents intended all the money to be a gift to her, while Joe Dyke said that the transaction was a gift to the family. She further indicated that she may have spoken with her husband about it before its occurrence. Yet, what these two people may have believed is of little import compared to what the donors did and intended, for it is the donors' intent that controls.

[him] from benefitting from those gifts upon the dissolution of the marriage" contradicts equity.[3] *In re Royal*, 107 S.W.3d at 852; *see also Williams v. Williams*, No. 02-08-0033-CV, 2008 Tex. App. LEXIS 9238, at *13 (Tex. App.—Fort Worth December 11, 2008, no pet.) (mem. op.) (considering the way in which the transaction was described on the gift tax return as evidence of what the transaction depicted, that is, a gift). It may be that some evidence supports the trial court's finding. It may be that we must defer to the trial court's interpretation of historical fact and resolution of evidentiary contradictions. Yet, equity coupled with the overwhelming weight of observable evidence *existent in 2003* (not disclosed years later in an effort to help a daughter) render the trial court's finding that Susan alone was the recipient of a $50,000 gift manifestly wrong and unjust. As the old adage goes, "actions speak louder than words." The actions undertaken by the Samuelsons in 2003 speak louder than words uttered in 2012, which words not only happen to contradict their prior action but also happen to favor their daughter in a divorce proceeding.

Because the finding in question materially affected the manner in which the trial court divided the marital estate of Joe Dyke and Susan, we have no choice but to reverse that portion of the judgment dividing the marital estate and remand for further proceedings.

---

[3] Susan attempts to criticize our opinion in *Royal* by asserting: " . . . to find that equity is a factor to consider when determining the donor's intent runs contrary to Texas gift law analysis as it has stood for many years." The "equity" at issue is not simply what we thought just or right. Instead, it involved the simple notion that one should be bound by what he said, which, in this case, is the manifestation of intent made to the federal government. The inequity comes in allowing donors to misrepresent a matter to the government, secure a tax benefit from that misrepresentation, and later contradict that representation to secure a different benefit for a family member. Simply put, courts should not be party to such deceit.

*Characterization of Guns*

One last issue needs consideration. It involves firearms that Joe Dyke considered to be his separate property. He contends that the trial court erred in 1) failing to so find and 2) including them in its evaluation of the value of the community property. We overrule the issue.[4]

According to the record, Susan testified that some of the firearms were purchased during marriage and others were in Joe Dyke's possession when they married. Yet, there was no specific testimony as to which guns fell within which category. And, in response to being asked whether Joe Dyke claimed that some of the guns were his separate property, Joe Dyke replied, "no, Ma'am, they were my father's," he (Joe Dyke) had custody of them, some belonged to his brother, and they had yet to divide them. An inventory of the firearms also indicates that some may belong to Joe Dyke's son. Given the uncertain tenor of the recorded evidence, we cannot say that the trial court erred in not finding them to be Joe Dyke's separate property.

That portion of the judgment dividing the marital estate is reversed. All other portions of the judgment are affirmed. And, the cause is remanded for further proceedings on the matter of dividing the marital estate.[5]

Brian Quinn
Chief Justice

---

[4] All of the guns except one were awarded to Joe Dyke by the trial court when dividing the community estate.

[5] Our disposition of the first point relieves us from having to address the others.